# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

METTLER-TOLEDO, INC.,

    Plaintiff,

vs.

B&B ELECTRIC, INC.,

    Defendant.

CASE NO.: 2:18-CV-00494
JUDGE GEORGE C. SMITH
MAGISTRATE JUDGE VASCURA

## OPINION AND ORDER

This matter is before the Court upon Defendant B&B Electric, Inc. ("B&B")'s Motion for Judgment on the Pleadings to Dismiss Plaintiff's First Amended Complaint. (Doc. 13). Plaintiff responded in opposition (Doc. 15), and Defendant replied in support. (Doc. 16). The motion is now ripe for disposition. For the following reasons, Defendant B&B's Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

On October 10, 2016, Plaintiff Mettler-Toledo, LLC ("MT") entered into an equipment-supply subcontract (the "Subcontract") with Defendant B&B to provide goods and ancillary installment services for use in the Wisconsin Department of Transportation's ("WiDOT") I-90 Sparta Safety & Weight Facility Project 1070-00-72 (the "Project"), in Monroe County, Wisconsin. (Doc. 11, Am. Compl. ¶ 5). According to the Subcontract, MT agreed to provide weigh-in-motion ("WIM") equipment to B&B to install on the Project, which was for a highway weigh station facility. *(Id.* ¶¶ 5–6).

Plaintiff MT is a Delaware limited liability company with its principal place of business in Columbus, Ohio. (*Id.* at ¶ 1). Defendant B&B is a Wisconsin corporation having its principal place of business in Eau Claire, Wisconsin. (*Id.* at ¶ 2). Plaintiff alleges that it has performed all of its contractual obligations under the Subcontract to provide WIM equipment to the Project. (*Id.* at ¶ 7). However, Defendant denies that Plaintiff installed the WIM equipment so that it met the performance standards in the WiDOT specifications. (Doc. 12, Ans. Am. Compl. ¶ 7). Defendant also alleges that WiDOT officials and Chippewa Concrete notified Plaintiff of deficiencies in Plaintiff's performance under the Subcontract on several occasions and of the need for Plaintiff to take remedial actions. (*Id.*).

However, Plaintiff alleges that the Subcontract did not contain a "flowdown" provision that bound Plaintiff to any terms, conditions, or specifications of any contract agreement between Chippewa Concrete (the general contractor for the Project) and WiDOT (the owner of the Project). (Am. Compl. ¶ 9). Plaintiff also alleges that Defendant directed Plaintiff to modify the scope of Plaintiff's deliverables under the Subcontract to accommodate evolving design changes and supply equipment different from that which was agreed upon under the Subcontract. (*Id.* at ¶ 17). Plaintiff further alleges that it incurred substantial additional costs in its efforts to accomplish these changes to accommodate Defendant and mitigate damages. (*Id.* at ¶¶ 16–18). Finally, Plaintiff alleges Defendant has failed to pay Plaintiff for the equipment Plaintiff supplied to the Project. (*Id.* at ¶ 27).

Plaintiff asserts a total of five claims against Defendant. Count I alleges that Defendant breached its contract with Plaintiff. (*Id.* at ¶¶ 32–35). Count II alleges that Defendant violated Ohio's Prompt Pay Act by failing to pay Plaintiff for the equipment that Plaintiff supplied to the Project. (*Id.* ¶ 39). Count III alleges that Defendant engaged in tortious interference with

Plaintiff's business relationship with WiDOT. (*Id.* at ¶¶ 44–45). Count IV seeks declaratory judgment by this Court on a number of claims, which will be discussed in greater detail below (*Id.* at ¶ 49). Finally, Count V seeks punitive damages because Defendant's alleged tortious conduct under Count III demonstrated malice or aggravated and egregious fraud. (*Id.* at ¶¶ 51–53).

Plaintiff originally filed this action in the Franklin County Court of Common Pleas, but it was removed to this Court on May 18, 2018 (Doc. 1). Defendant timely filed its Answer to the Complaint on June 4, 2018 (Doc. 3). Plaintiff subsequently filed an Amended Complaint on October 17, 2018 (Doc. 11). Defendant timely filed an Answer to the Amended Complaint on October 29, 2019 (Doc. 12). On October 29, 2018, Defendant filed a Motion for Judgment on the Pleadings to Dismiss Plaintiff's First Amended Complaint (Doc. 13). Plaintiff filed a Response in Opposition on November 19, 2018 (Doc. 15). On November 28, 2018, Defendant filed a Reply (Doc. 16). The Court now turns to Defendant's Motion for Judgment on the Pleadings.

## II. STANDARD OF REVIEW

Defendant brings this motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Id.*; *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A pleading will

3

satisfy this plausibility standard if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint;" a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

### III.    DISCUSSION

**A.    Breach of Contract**

Defendant B&B contends that there is a "flowdown" provision in the Subcontract that contractually binds Plaintiff to resolve any dispute(s) with Defendant in Wisconsin and pursuant

to the dispute resolution procedures specified in the Prime contract for the Project. (Doc. 13, Mot. at 10). Although the Subcontract does not define the term "Prime contract," Defendant explains that the Prime contract was the agreement between WiDOT and Chippewa Concrete for the construction of the Project. (Doc. 12, Ans. Am. Compl. ¶ 5). The relevant provision of the Subcontract that Defendant relies upon is:

> Subcontractor hereby agrees to furnish all materials, tools, and equipment, and to perform all work and labor necessary, including shop drawings when required, the testing of materials when required, and the securing of all field measurements necessary or required, for the completion of a portion or subdivision of the work to be performed on the following described project <u>in accordance with the Prime contract between Contractor and the Owner and all plans, drawings, and specifications including general and special conditions and addenda.</u>

(Doc. 11-1, Subcontract at 1) (emphasis added). However, the Subcontract also contains a "Scope of Work" provision that states "See attached scope letter included (pages 1–18)." (*Id.*) The Scope Letter contains a "Contract" provision that states: "Provisions of the original purchaser ("Buyer")'s purchase order, including Buyer's terms and conditions of purchase, or other documents that add to or differ from these terms and conditions, including any documents presented to [MT]'s filed service representatives, are EXPRESSLY rejected." (*Id.* at 14) (emphasis in original). The scope letter also contains a "Governing Law and Place of Jurisdiction" provision which states "[t]he legal relationship between Buyer and Company shall be governed by the laws of the State of Ohio and the United States of America. Exclusive place of jurisdiction shall be Franklin County, Ohio." (*Id.* at 18).

The Sixth Circuit has stated that when resolving a contract claim in a diversity action, the court must apply the substantive law of the forum state "in accordance with the controlling decisions of its highest court." *McClusky v. Century Bank*, 598 Fed. Appx. 383, 386 (6th Cir. 2015) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013))

(internal quotation marks omitted). Under Ohio contract law, the court's role is to give effect to the intent of the parties, which is presumed to be reflected in the language of the contract. *Id*. (citing *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014)). Accordingly, a court will not construct a contract or give it a meaning other than that which the plain language of the contract provides. *Id.* at 386–87 (citation omitted).

Looking to the plain language of the Subcontract, there is language that suggests the parties intended to incorporate, at least to some extent, both the contract between Defendant, Chippewa Concrete, and WiDOT and pages 1–18 of the Scope Letter provided by Plaintiff in some capacity. (Doc. 11 Exhibit 1). At this stage of the proceedings, the Court does not attempt to interpret any apparent conflicts in the language of these provisions or ambiguous language in the Subcontract. However, the parties are advised that, based upon the pleadings alone, there are apparent ambiguities and conflicts within the language of the agreement that pose a challenge to giving meaning to the parties' intent when they entered into the Subcontract. For now, Plaintiff has pleaded sufficient facts to present a plausible claim that Plaintiff's disclaimer of any terms and conditions or other documents that differ from those contained in pages 1–18 of the Scope Letter is enforceable.

Additionally, the plain language of the Subcontract states:

> Monthly progress payments [less retainage] shall be made to Subcontractor within ten (10) days after B&B Electric's receipt of payment from Prime Contractor (Chippewa Concrete), so long as Subcontractor is not in default or breach of this Agreement and is not subject to other reasons for withholding. Payments otherwise due Subcontractor may be offset and/or withheld by B&B Electric to the extent necessary to pay for its direct costs due to Subcontractor's defective work not remedied but only after Mettler-Toledo receives written notice of the defect and is given reasonable opportunity to cure the defective work.

(*Id.*). Plaintiff alleges that it was not timely paid for equipment supplied to Defendant "without legal excuse and justification . . . in violation of the Subcontract." (Am. Compl. ¶ 27). Plaintiff

6

also alleges that Defendant has received payment for equipment supplied by Plaintiff to the Project. (*Id.* at ¶ 30). Although Defendant may dispute these allegations, Plaintiff has nonetheless pleaded sufficient facts that, if proven true, present a plausible claim for breach of contract.

Finally, Defendant contends that there is a conflict between Wisconsin and Ohio law which renders the choice of law provision in the Plaintiff's Scope Letter void. (Doc. 13, Mot. at 9). Defendant argues that Wisconsin Statute § 779.135(2) controls in this case. (*Id.*). Wisconsin Statute § 779.135(2) states, "[p]rovisions [in a contract for the improvement of land in this state] making the contract subject to the laws of another state or requiring that any litigation, arbitration or other dispute resolution process on the contract occur in another state [are void]." However, Wisconsin Statute § 779.01(1)(a) defines "improve" or "improvement" as "any building, structure, erection, fixture, demolition, alteration, excavation, filling, grading, tiling, planting, clearing, landscaping, repairing, or remodeling which is built, erected, made or done on or to land for its benefit."

As this court has previously stated, "[a] federal court exercising diversity jurisdiction is required to apply the choice of law rules of the state in which it sits." *Mecanique C.N.C., Inc. v. Durr Environmental, Inc.*, 304 F.Supp.2d 971, 975 (S.D. Ohio 2004) (Marbley, J.). Ohio's choice of law rules require the Court to first determine whether a choice of law analysis is necessary. *Id.* (citing *Akro-Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 685 N.E.2d 246, 248 (Ohio Ct. App. 1996)). If the two states would use the same rule of law or would otherwise reach the same conclusion, there is no conflict of law and therefore no need to make a choice of law determination. *Id.*

Plaintiff argues that the Subcontract was for the sale of equipment to Defendant for installation on the Project. (*See* Docs. 11, Am. Compl. ¶ 6; 15, Resp. at 7). Plaintiff alleges that the predominant purpose for the equipment-supply Subcontract was therefore a contract for the sale of goods. (Doc. 11, Am. Compl. ¶ 13). Making every reasonable inference in favor of Plaintiff, these allegations, if proven true, would render Wisconsin Statute § 779.135(2) inapplicable to the case at hand. Under Wisconsin Statute 779.01(1)(a), "improve" or "improvement" to land does not include supplying goods or equipment to a project for the improvement of land. Therefore, Plaintiff has pleaded sufficient facts that, if proven true, present a plausible claim that the choice of law provision in the Scope Letter attached to the Subcontract is not governed by Wisconsin Statute § 779.135(2) and is therefore enforceable.

Plaintiff also contends that the Subcontract is governed by Article 2 of the Uniform Commercial Code because it is a contract predominately for the sale of goods (*Id.* at ¶ 13). As both Ohio and Wisconsin have adopted Article 2, there is no conflict of law on this issue. Therefore, Plaintiff has pleaded sufficient facts that, if proven true, present a plausible claim for breach of contract. Defendant's Motion for Judgment on the Pleadings is **DENIED** as to Count I of Plaintiff's First Amended Complaint.

**B.     Violation of the Ohio Prompt Pay Act**

Plaintiff alleges that Defendant has failed to pay Plaintiff for equipment that Plaintiff supplied to the Project within the time required by the Ohio Prompt Pay Act. (*Id.* at ¶¶ 27, 39). The Ohio Prompt Pay Act states:

> If a subcontractor or material supplier submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in the contractor's own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for improvements to property, shall pay to the . . . [s]ubcontractor, an amount that is equal to the percentage of completion of the

> subcontractor's contract allowed by the owner for the amount of labor or work performed . . . [and] [m]aterial supplier, an amount that is equal to all or that portion of the invoice for materials which represents the materials furnished by the material supplier.

O.R.C. § 4113.61(A)(1)(a) and (b). Plaintiff alleges that both Defendant and Chippewa Concrete have acknowledged that Plaintiff served as a supplier to a subcontractor for the Project. (Doc. 11, Am. Compl. ¶ 14). Plaintiff also alleges that Defendant and Chippewa Concrete have been paid by WiDOT for equipment supplied to them by Plaintiff. (*Id.* at ¶ 30). Therefore, Plaintiff has pleaded sufficient facts that, if proven true, present a plausible claim that Defendant failed to pay Plaintiff for materials supplied to Defendant within the time required under the Ohio Prompt Pay Act.

The Court notes that whether the Ohio Prompt Pay Act applies to this suit depends upon whether Ohio or Wisconsin law is found to govern the Subcontract. At this stage in the proceedings, Plaintiff has pleaded sufficient facts that, if proven true, present a plausible claim that Plaintiff's choice of law provision is enforceable (as discussed above), which would make the Ohio Prompt Pay Act applicable to the Subcontract. Accordingly, Defendant's Motion for Judgment on the Pleadings is **DENIED** as to Count II of Plaintiff's First Amended Complaint.

C. **Tortious Interference with Business Relationship**

Plaintiff alleges that Defendant engaged in tortious interference with Plaintiff's business relationship with WiDOT. (*Id.* at ¶¶ 42–46). According to Plaintiff, Defendant knew of Plaintiff's prospective business relationship with WiDOT to provide WIM equipment for other prospective projects. (*Id.* at ¶¶ 42–43). Plaintiff alleges that Defendant encouraged WiDOT to abandon its prospective business relationships with Plaintiff by making "false, defamatory and malicious accusations and actions regarding MT's performance on the Project." (*Id.* at ¶ 44). Plaintiff further alleges that Defendant has interfered in Plaintiff's prospective business

relationship with WiDOT "to improperly coerce MT into providing goods and services which it is not required to provide under the threat of losing its prospective business relationship with WiDOT." (*Id.* ¶ 45).

Ohio law recognizes a cause of action for tortious interference with a business relationship. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (citing *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283, 1294 (1995)). Tortious interference with a business relationship occurs when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Id.* (internal quotation marks omitted).

Under Ohio law, the Plaintiff bears the burden of proving "lack of privilege" or "improper interference." *Id.* at 742 (citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863, 866 (1995)). In determining whether alleged conduct was privileged, the court must take into account the following seven factors:

> (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the party with whom the actor has interfered, (4) the interests sought to be advanced by the actor, (5) the social interests of protecting the freedom of contracting and the interference with such, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.

*Id.* at 742 (citing *Kand Medical v. Freund Medical Products*, 963 F.2d 125, 128 (6th Cir. 1992)). In the case at hand, Plaintiff alleges that Defendant's conduct consisted of "a malicious, false and defamatory campaign against MT, and with WiDOT . . . to improperly coerce MT into providing goods and services which it was not required to provide [to the Project] under the threat of losing its prospective business relationship with WiDOT." (Doc. 11, Am. Compl. ¶ 45). Plaintiff also alleges that Chippewa Concrete threatened to pass down the liquidated damages threatened by

WiDOT to Defendant, who in turn threatened to pass those liquidated damages on to Plaintiff. (*Id.* at ¶ 19). Additionally, Plaintiff alleges that Defendant interfered with Plaintiff's business relationship with WiDOT via "false, defamatory and malicious accusations and actions regarding MT's performance on the Project." (*Id.* at ¶ 44). Finally, given the nature of both Defendant and Plaintiff's work as subcontractors on the Project, it is logical to presume both parties currently have or seek to have additional business relations with WiDOT for other projects. Comparing these facts to the factors for determining privilege, Plaintiff has pleaded sufficient facts that, if proven true, plausibly demonstrate that Defendant attempted to interfere with Plaintiff's business relationship with WiDOT without privilege to do so.

However, Plaintiff's business relationships with WiDOT still appear to be intact despite Defendant's alleged conduct. Plaintiff alleges that "if" WiDOT refuses to do further business with Plaintiff that Plaintiff will suffer damages "as a direct and proximate result of B&B's intentional interference with MT's prospective business relationship with WiDOT." (*Id.* at ¶ 47). Plaintiff does not allege that it has actually incurred a loss of its business relationship with WiDOT as a result of Defendant's alleged conduct. Accordingly, Plaintiff has not pleaded sufficient facts to demonstrate that Defendant's conduct actually interfered with Plaintiff's business relationship with WiDOT. Plaintiff has therefore failed to plead sufficient facts to present a plausible claim that Defendant's alleged conduct satisfied all parts of the test for tortious interference with a business relationship. As a result, Defendant's Motion for Judgment on the Pleadings is **GRANTED** in regards to Count III of Plaintiff's First Amended Complaint.

**D.     Declaratory Relief**

Plaintiff alleges it is entitled to declaratory judgment on a number of claims. First, Plaintiff alleges that the UCC governs the Subcontract because the predominant purpose of the

Subcontract was for the sale of goods. (*Id.* at ¶ 49(a)). As previously discussed, Plaintiff agreed to provide Defendant with WIM equipment for installation on the Project. (*Id.* at ¶ 6). Accordingly, Plaintiff has pleaded sufficient facts that, if proven true, present a plausible claim that the Subcontract was for the sale of goods and therefore governed by Article 2 of the UCC. (*Id.* at ¶¶ 13, 15).

Second, Plaintiff alleges that it has fully performed its contractual obligations under the Subcontract, (*Id.* at ¶ 7), and Defendant has failed to pay Plaintiff for equipment that was supplied to the Project despite the fact Defendant allegedly received payment from WiDOT for that equipment. (*Id.* at ¶¶ 27, 30). Plaintiff alleges that based upon these facts, it is entitled to complete payment under the terms of the Subcontract. (*Id.* at ¶ 49(b)). Furthermore, Plaintiff alleges that it is not liable for any liquidated damages levied by WiDOT against Chippewa Concrete and passed down to Defendant pursuant to a provision of the Subcontract disclaiming Plaintiff's liability for "claims of [B&B's] customers or contractors for such damages." (*Id.* at ¶¶ 22, 49(c)). Accordingly, Plaintiff has pleaded sufficient facts to present plausible claims that it has performed in full and that it is not liable for liquidated damages.

Next, Plaintiff alleges that it is not liable for any alleged breach of a warranty of merchantability or fitness for a particular purpose that relates to the equipment Plaintiff supplied to the Project. (*Id.* at ¶ 49(d)). In support of that allegation, Plaintiff cites a provision of the Subcontract where Plaintiff argues it disclaimed all express or implied warranties of merchantability or fitness for a particular purpose. (*Id.* at ¶ 12). Plaintiff further alleges that the Subcontract is a fully-integrated agreement that contains and fully expresses all of the agreements and understandings between the parties. (*Id.* at ¶ 49(e)). Plaintiff alleges that "[t]he fully-integrated equipment-supply Subcontract provided all of the terms, conditions, and

specifications regarding the scope of MT's equipment-supply undertaking." (*Id.* at ¶ 8). Questions of fact remain as to whether the parties intended for both the Prime Contract between Chippewa Concrete and WiDOT and the Scope Letter provided by Plaintiff to be integrated into the Subcontract. However, at this stage in the proceedings, Plaintiff has pleaded sufficient facts to present a plausible claim that the Subcontract was a fully-integrated agreement in which Plaintiff waived any express or implied warranties of merchantability or fitness for a particular purpose.

Additionally, Plaintiff alleges that the Subcontract excludes any "flow-down" provisions from any agreements between Chippewa Concrete and WiDOT. (*Id.* at ¶ 49(f)). Plaintiff alleges that the Subcontract "expressly excluded the application of any terms, conditions, specifications, or "flow-down" provisions, from any other contract or agreement." (*Id.* at ¶ 10). Plaintiff further alleges that the Subcontract contains the exhaustive list of remedies available to Defendant for any alleged breaches of the Subcontract by Plaintiff or other causes of action identified by Defendant. (*Id.* at ¶ 49(g)). In support, Plaintiff alleges that Section 10 of the Scope Letter incorporated in the Subcontract contains a provision that sets forth the only remedies available to Defendant if Plaintiff breached a warranty under the Subcontract. (*Id.* at ¶ 24). Plaintiff has pleaded sufficient facts to present a plausible claim that the Subcontract excluded any "flow-down" provisions from any other agreements. Furthermore, Plaintiff has pleaded sufficient facts to present a plausible claim that the Subcontract contains the exhaustive list of remedies available to the Defendant for Plaintiff's alleged breach of any of the warranties made explicit in the Scope Letter. (*Id.*). However, Plaintiff has not pleaded sufficient facts to present a plausible claim that the Subcontract contains the exhaustive list of remedies available

13

to Defendant in the event Plaintiff breached the Subcontract in a manner that did not implicate any warranties made or disclaimed by Plaintiff.

Finally, Plaintiff alleges that it is entitled to recover the costs and value of the additional work Plaintiff performed on the Project at Defendant and Chippewa Concrete's direction. (*Id.* at ¶ 49(h)). Plaintiff alleges that Defendant insisted that Plaintiff "modify the scope of its contractual deliverables to accommodate the evolving design changes, and supply equipment different from that which was agreed upon in the Subcontract." (*Id.* at ¶ 17). Plaintiff further alleges that it "endeavored to accomplish those design changes and in the process has incurred substantial additional costs." (*Id.* at ¶ 18). Accordingly, Plaintiff has also pleaded sufficient facts that, if proven true, present a plausible claim that Plaintiff is entitled to recover the costs and value of additional work Plaintiff allegedly performed on the Project.

Therefore, although there are questions of fact as to the terms of the Subcontract and Plaintiff's potential liability under the Subcontract, Plaintiff has pleaded sufficient facts that, if proven true, would entitle Plaintiff to declaratory relief with one exception. Plaintiff has not pleaded sufficient facts to present a plausible claim that the Subcontract contains the exhaustive list of remedies available to Defendant in the event Plaintiff's conduct breaches the Subcontract and/or gives rise to another cause of action outside the scope of the warranties that Plaintiff made and allegedly disclaimed in the Subcontract. Accordingly, Defendant's Motion for Judgment on the Pleadings is **GRANTED** in part and **DENIED** in part as to Count IV of Plaintiff's First Amended Complaint.

**E.     Punitive Damages**

Plaintiff alleges that it is entitled to punitive damages because Defendant's allegedly tortious conduct under Count III of the Amended Complaint demonstrated "malice or aggravated

and egregious fraud." (*Id.* at ¶¶ 51–52). In Ohio, punitive damages may be awarded in tort cases involving fraud, malice, or insult. *Leichtamer v. American Motors Corp.*, 424 N.E.2d 568, 579 (Ohio 1981). However, as previously discussed, the Court has determined that Plaintiff has failed to plead sufficient facts to present a plausible claim that Defendant engaged in tortious interference with a business relationship. Accordingly, Plaintiff has also failed to plead sufficient facts to present a plausible claim that Plaintiff is entitled to punitive damages for Defendant's alleged conduct. Defendant's Motion for Judgement on the Pleadings is therefore **GRANTED** as to Count V of Plaintiff's First Amended Complaint.

## IV. DISPOSITION

Based on the foregoing, Defendant's Motion for Judgment on the Pleadings is **DENIED** as to Counts I and II of Plaintiff's First Amended Complaint, **GRANTED** as to Counts III and V, and **GRANTED** in part and **DENIED** in part as to Count IV.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**